GILBERTO A. PAGÁN LAMOLLY, demandante y apelante, *v.* EUGENIO A. GUARDIOLA y THE MARYLAND CASUALTY CO., demandados y apelados.

Número 11136.

*Sometido:* 7 de abril de 1954. *Resuelto:* 8 de junio de 1955.

---

[8] En Puerto Rico tenemos varias leyes que fijan como festivos los días que en ellas taxativamente se especifican.

*J. Alemañy Sosa,* abogado del apelante; *F. Fernández Cuyar* y
*Rafael A. González,* abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del
Tribunal.

Don Gilberto A. Pagán, estudiante del Colegio de Agri-
cultura y Artes Mecánicas de la Universidad de Puerto Rico,
fué invitado por don Eugenio A. Guardiola, también estu-
diante de dicho Colegio, a acompañarlo hasta la ciudad de
San Germán, donde residían ambos. Parece que el señor
Guardiola frecuentemente, recogía a sus compañeros de es-
tudios para conducirlos hasta la ciudad de San Germán en
una camioneta de carga ligera (*pick-up*) de su propiedad,
manejada por el propio señor Guardiola. Al llegar a la ciu-
dad de San Germán, y mientras subía la pendiente de la en-
trada, el señor Guardiola tuvo necesidad de reducir su mar-
cha, al encontrarse con un vehículo estacionado a su derecha
y con otra guagüita que venía descendiendo en dirección

contraria. El chófer de la guagüita que venía descendiendo decidió darle paso a la camioneta del señor Guardiola. Para continuar la marcha, el señor Guardiola tuvo necesidad de acelerar su camioneta mediante el uso de la segunda velocidad, lo cual sacudió fuertemente la caja abierta de la camioneta, donde venía el señor Pagán, de pie, asido a los tubos del cerco, en unión de otros compañeros de colegio. La sacudida sacó al señor Pagán de la caja, lanzándolo al pavimento de la calle, donde quedó en estado de inconsciencia.

El señor Pagán presentó una acción civil solicitando compensación por lesiones físicas, pérdida de sus estudios universitarios, sufrimientos morales, dolores físicos y agonía mental, (entiéndase daños morales, o *pecunia doloris*, o según la acertada definición de Puig Peña "daños morales de evidente repercusión patrimonial"). El señor Guardiola contestó, alegando entre otras defensas especiales, negligencia contributoria (compensación de culpas) y accidente desgraciado o inevitable, (caso fortuito).

La acción civil se vió ante la ilustrada Sala sentenciadora de Mayagüez, la cual, después de exponer sus conclusiones de hecho y de derecho, las primeras en el sentido, que "como cuestión de hecho...la sacudida del vehículo con motivo del cambio de velocidad, si bien sensible en la parte de atrás del mismo, no fué tal que de ello pudiese inferirse que dicha maniobra fué negligentemente efectuada por su conductor" y las segundas en el sentido, que "el accidente, según la prueba, fué uno desgraciado o inevitable", denegó la reclamación de los daños. Además hizo un pronunciamiento de posible compensación de culpas, al decir: "el demandante, persona *sui juris*, comprendiendo los peligros naturales de viajar en la parte trasera de una pick-up abierta debió tomar las medidas que tomaron sus demás compañeros de asirse a los tubos de la guagüita, en forma de no ser lanzado con cualquier movimiento del vehículo".

La ilustrada Sala sentenciadora estuvo en lo correcto al resolver, que el dueño o conductor de un vehículo privado tiene la misma obligación de preservar la vida de

un invitado (*invitee*) que la vida de cualquier otro ocupante de un vehículo privado que no resulte invitado suyo. Sería un contrasentido dentro de los supuestos de normalidad y orden de una civilización, establecer una regla, mediante la cual, el conductor de un automóvil, o el dueño de éste, en aquellos casos donde deba responder el dueño, pueda ejercitar un menor grado de diligencia, por el hecho de ser el ocupante de su automóvil un invitado suyo. Como bien ha dicho el Tribunal Supremo de España "la obligación de indemnizar daños y perjuicios dimanantes de un hecho ilícito, responde en la esfera cuasidelictual, a la falta de prudencia o diligencia que normalmente es debida en el ámbito de la convivencia humana". Sentencia del 20 de octubre de 1950, 32 Jur. Civ. 53 *et seq.;* (ed. del Instituto Editorial Reus del 1953). Los arts. 1802 y 1803 de nuestro Código Civil no distinguen entre una relación de invitado gratuito y conductor o dueño y otra relación cualquiera: 4 Castán, Derecho Civil Español Común y Foral, 775 *et seq.,* (ed. del Instituto Editorial Reus de 1952); IV–2 Puig Peña, Tratado de Derecho Civil Español, 561 *et seq.,* (ed. de la Editorial Revista de Derecho Privado del 1951); 7–Oyuelos, Digesto 678 *et seq.,* (ed. del Cuerpo de Derecho Español de 1932). Igual teoría prevalece en aquellas jurisdicciones estatales norteamericanas donde no se ha fijado legislativamente una norma distinta: *Guillory et ux* v. *Perkins,* 6 So.2d 177, (*Dore*), (1942), cita precisa a la pág. 178; 60 C. J. S. 977, secs. 399(1), 399(3), 399(5); 5 Am. Jur. 626, sec. 230; 4–1 Blashfield, *Cyclopedia of Automobile Law and Practice* 344, sec. 2311, (ed. conjunta de Vernon Law Book Company y West Publishing Co. de 1946; Suplemento del 1954 a la pág. 45); Fowler Vincent Harper: "A Treatise on the Law of Torts", págs. 158, 170, secs. 69 y 74, (ed. de The Bobbs—Merril Company de 1933). No hemos examinado el problema de la asunción de riegos, ni el de la responsabilidad objetiva aplicables a accidentes de circulación, (*res ipsa lo-*

*quitur*), hecho manifiesto del cual puede inferirse el daño, por no estar comprendidos en estè caso.

■ La prueba fué contradictoria en cuanto a todos y cada uno de los extremos de la negligencia o ilicitud del hecho. No podemos decir que no existen hechos probados sobre los cuales la ilustrada Sala sentenciadora no pudiera concluir sobre la concurrencia o compensación de culpas en la forma que lo hizo. Por lo tanto respetaremos, tanto su autoridad para la apreciación de la prueba como para inferir sobre los efectos jurídicos de los hechos probados.

*Debe confirmarse la sentencia apelada.*