ULPIANO VÉLEZ, en su carácter de ADMINISTRADOR INTERINO DEL FONDO DEL SEGURO DEL ESTADO *Ex rel* JUAN GONZÁLEZ CAQUÍAS y ENRIQUE SOTOMAYOR, demandantes y apelados, *v.* ATLAS LINE, INC., y U. S. CASUALTY CO., demandadas y apelantes.

Número 11342.

*Sometido:* 3 de noviembre de 1954. *Resuelto:* 28 de octubre de 1955.

*Leopoldo Tormes García* y *Rafael Atiles Moreu,* y *Emilio de Aldrey,* abogados, respectivamente, de los apelantes; *Rafael Hernández Matcs,* abogado del apelado Sr. González Caquías; *Donald R. Dexter* y *G. Wiscovitch,* abogados del apelado, Fondo del Seguro del Estado.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

■ Este choque se produjo porque el automóvil público de la demandada Atlas Line, Inc., interceptó el derecho a vía franca de una ambulancia municipal que transportaba un enfermo al Hospital Tricoche. Como siempre sucede en los accidentes de circulación hay dos versiones sobre la manera como ocurrieron los hechos y dos hipótesis sobre la responsabilidad extracontractual o Aquiliana: 4 Castán: Derecho Civil Español Común y Foral, 775 *et seq.*, cita precisa a la pág. 778, (séptima edición del Instituto Editorial Reus de 1952); IV–II Puig Peña: Tratado de Derecho Civil Español 567

*et seq.*, cita precisa a la pág. 568, (ed. de la Editorial Revista de Derecho de 1951). La ilustrada Sala sentenciadora se decidió por la versión que presentaba la prueba del demandante, y examinada cuidadosamente la transcripción de evidencia estamos conformes que existe suficiente prueba en dicha transcripción para sostener dichas conclusiones de hecho y que el análisis de ellas no resultan claramente erróneas, y por tanto, no podemos ejercitar nuestro poder tradicional de dejarlas sin efecto.

■■ En cuanto a la responsabilidad extracontractual no cabe la menor duda que el art. 17 inciso G de la Ley de Automóviles y Tránsito de Puerto Rico, 9 L.P.R.A. 187, en su último párrafo, lee como sigue: "todo conductor de vehículos de motor cederá el derecho de paso a las bombas de incendio, *ambulancias* y vehículos de la Policía de Puerto Rico *cuando éstos vayan en diligencia de emergencia* y cuando los conductores de dichos vehículos den avisos oíbles, como campanas, sirenas o pitos; todo conductor al acercarse a cualquiera de los vehículos de emergencia indicados, dando los avisos oíbles mencionados, deberá colocar su vehículo bien hacia la derecha y detendrá la marcha hasta que haya pasado el vehículo de emergencia." Como se ve lo que determina el derecho a vía franca es: 1ro. una diligencia de emergencia y 2do. un aviso oíble dado por los aparatos de alarma de la ambulancia.

La prueba es clara que el conductor de la ambulancia, cuando ocurrió el choque, transportaba un enfermo hasta el Hospital Tricoche; que desde que la ambulancia salió de la calle Intendente Ramírez hasta llegar a la esquina de las calles Arenas y Atocha iba tocando continuamente la sirena de alarma, la cual oyeron, tanto los testigos del demandante y apelado como los testigos de las demandadas y apelantes: (*González*, t. 38); *Chacón*, t. 62, 63, 68); (*Rodríguez Morell*, t. 85–86); (*Díaz Vélez*, t. 98–99); (*Sotomayor*, t. 118, 119–120); (*Tooker*, t. 142); (*Pérez*, t. 155–160); (*Álvarez*, 160, 166–167); (*Clivillés*, t. 176–177).

El conductor de la ambulancia tenía derecho a suponer

que encontraría la vía franca, no sólo por la diligencia de emergencia en que se ocupaba sino también por el aviso oíble que venía dando a tal efecto. El cuidado tutelar principal en una situación como ésta, la ley se lo impone al conductor del vehículo que se ocupa en una tarea de transportación normal y no al conductor del vehículo que se ocupa en una tarea de transportación de emergencia. Aunque la diligencia de emergencia no le da derecho al conductor de una ambulancia, de arrollarlo todo a su paso, sin tomar precauciones para la seguridad de las vidas y propiedades ajenas, le da derecho al uso preferente de la vía franca a una mayor velocidad que la que ordinariamente puede aplicar otro conductor de un vehículo de transportación.

Siendo esto así, el conductor del vehículo de pasajeros ha debido parar inmediatamente y no tratar de cruzar la intersección de la calle principal, que en este caso, es la calle Arenas, por donde venía la ambulancia. Las autoridades no distinguen en cuanto a esta obligación entre los vehículos que transitan por la misma calle por donde corre el vehículo de emergencia, y los vehículos que se acercan a la calle por donde corre el vehículo de emergencia o la interceptan: 1–2 Blashfield–*Cyclopedia of Automobile Law and Practice* 736, sec. 802, (ed. de Vercon Law Book Company y West Publishing Co. del 1948, mantenida al día mediante suplementos anuales). De manera pues, que no podemos considerar como una exclusión de culpabilidad, el hecho que el choque se produjera en una intersección de calles. En cuanto a la mayor velocidad a que tiene derecho un vehículo de emergencia, véase la sec. 803 de la misma obra a la pág. 743.

El hecho de que el conductor de vehículo de pasajero no se parara inmediatamente y tratara de cruzar la calle Arenas por donde venía la ambulancia, representa una evidente violación de una obligación legal, un acto antijurídico proscrito por el famoso apotegma causal: "el que es causa de la causa es causa del mal causado". Esto en cuanto al primer error señalado.

■ El segundo error relacionado con la cuantía de los daños no nos convence. La mecánica inflacionista de nuestro tiempo, hace ya algunos años nos ha obligado a una valoración distinta del aspecto puramente remunerativo de los daños. La fractura de una clavícula, consolidada por un callo del hueso indudablemente representa una limitación anatómica parcial de carácter permanente y $5,000 no representa una suma tan desproporcionada con el daño sufrido, como lo entienden las demandadas y apeladas. En cuanto a la legitimidad de los daños por sufrimiento físicos—pecunia doloris—y daños morales, no podemos ya dudar de ella: *Pagán* v. *Guardiola*, 78 D.P.R. 388 (*Belaval*), (1955), cita precisa a la pág. 390.

■ En cuanto al tercer error, en el sentido que se trata de una sentencia fraccionada, dada en beneficio de uno sólo de los dos demandantes, cuando todavía el caso del otro demandante está pendiente de la prueba de los daños, no empece lo alegado, la transcripción demuestra que en cuanto al demandante y apelado ante nos, el caso se dió por terminado y sometido. Pero aunque así no lo fuera, la Regla 13(*i*) de las Reglas de Enjuiciamiento Civil de Puerto Rico, autorizan tal actuación judicial.

Tratándose de un caso de subrogación de acuerdo con el art. 31 de la Ley núm. 45 de 18 de abril de 1935 ((1) pág. 251), según enmendado por la Ley núm. 16 de 12 de abril de 1948 ((1) pág. 29), la sentencia debe ser corregida por la ilustrada Sala sentenciadora, en el sentido, que se reintegren al Fondo del Seguro del Estado los gastos incurridos en cuanto al obrero Juan González Caquías.

*Se confirma la sentencia apelada, enmendada en la forma que se deja expuesta.*

El Juez Asociado Sr. Marrero no intervino.