JUAN DÍAZ MARÍN, recurrido, *v.* MUNICIPIO DE SAN JUAN y OTROS, recurrentes.

*Número:* O-84-51          *Resuelto:* 5 de mayo de 1986

---

*Edwin Ortiz Pietri,* abogado del peticionario; *Ana T. Ramírez Padilla,* abogada del recurrido.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

Nos toca resolver cuál es el procedimiento apelativo disponible cuando un miembro de la Guardia Municipal es destituido de su cargo. El conflicto surge de tres estatutos regulatorios: la Ley de Personal del Servicio Público de Puerto Rico, Núm. 5 de 14 de octubre de 1975 (3 L.P.R.A. sec. 1301 y ss.); la Ley de la Guardia Municipal, Núm. 19 de 12 de mayo de 1977 (21 L.P.R.A. sec. 1061 y ss.), y la Ley Orgánica de los Municipios, Núm. 146 de 18 de junio de 1980 (21 L.P.R.A. sec. 2001 y ss.).

I

El recurrido Juan Díaz Marín fue declarado incurso en faltas graves y expulsado de la Guardia Municipal de San Juan. Al momento de su cesantía, el señor Díaz Marín ya había aprobado satisfactoriamente el período probatorio requerido por ley, por lo tanto era un empleado regular de carrera. Recurrió luego de la decisión del Alcalde, Sr. Hernán Padilla, al Tribunal Superior, donde se dictó sentencia declinatoria de jurisdicción y se remitió el caso a la Junta de Apelaciones del Sistema de Administración de Personal (J.A.S.A.P.). El Municipio de San Juan, inconforme con dicha decisión, acudió ante nos con un recurso de revisión que hemos tomado como

un *certiorari* y al notar conflicto en los estatutos expedimos el auto el 16 de febrero de 1984. Ahora confirmamos.

## II

■ La Ley de Personal de 1975 integró los municipios al sistema de personal del resto del Gobierno y los constituyó en administradores individuales, 3 L.P.R.A. sec. 1343(2), reconociéndoles así autonomía gerencial. En la declaración de política pública de esta Ley de Personal se afirmó:

> (2) A fin de asegurar la extensión y el fortalecimiento del principio de mérito a todos los sectores del servicio público puertorriqueño, *todos* los empleados públicos, sean éstos empleados estatales, o *municipales* a excepción de los excluidos en la sec. 1338 de este título, estarán cubiertos por un solo sistema de personal, establecido para hacer cumplir el servicio de mérito, el cual se conocerá como Sistema de Personal del Servicio Público. (Énfasis nuestro.) 3 L.P.R.A. sec. 1311(2).

■ La Ley confirió jurisdicción apelativa a la Junta de Apelaciones del Sistema de Administración de Personal (J.A.S.A.P.) para revisar las acciones o decisiones de los administradores individuales en los "casos de destitución o suspensión de empleo y sueldo por un empleado de carrera . . . o cuando alegue que una acción o decisión que le afecta viola cualquier derecho" que le concede la ley, 3 L.P.R.A. sec. 1394(1). También dispuso un recurso de revisión judicial de las decisiones de J.A.S.A.P. al Tribunal Superior, 3 L.P.R.A. sec. 1396.

■ La Junta de Apelaciones del Sistema de Administración de Personal fue creada como un organismo colegiado e independiente compuesto por un presidente y dos miembros asociados nombrados con el consejo y consentimiento del Senado. Estos nombramientos son a tiempo completo y los términos iniciales fueron escalonados por períodos de ocho, siete y seis años, y los subsiguientes por ocho años. La intención del

legislador al crear una junta "enteramente independiente de la Oficina Central de Administración de Personal" y establecer un término fijo para cada uno de los miembros fue claramente la de asegurar completa independencia de criterio. La intención legislativa fue claramente la creación de un tribunal apelativo a nivel administrativo con poderes adjudicativos, especializado en asuntos de personal, que fiscalizara rápida y efectivamente las decisiones de los administradores individuales y la Oficina Central de Administración de Personal:

> En segundo lugar, se aspira a que la Junta Apelativa pueda tener suficiente tiempo para atender con rapidez el número de apelaciones que pueda llegar como resultado de haber triplicado el número de empleados bajo su supervisión directa.[1] *Informe Conjunto sobre el P. del S. 1428 de las Comisiones de Gobierno y Derechos Civiles del Senado de Puerto Rico,* 30 de septiembre de 1975, pág. 29.

Véanse también: J. R. Feijoó, *La nueva Ley de Personal: problemas en su implementación,* 40 Rev. C. Abo. P.R. 257 (1979); F. Aponte Pérez, *La Ley de Personal de Puerto Rico y el servicio de confianza y de carrera,* 41 Rev. C. Abo. P.R. 99 (1980); Comisión del Gobernador para Estudiar Relaciones del Trabajo en el Servicio Público en Puerto Rico, *Anteproyecto de Ley Modelo e Informe Explicativo,* Vol. II, párr. 3 de Segunda Parte (1974).

En Puerto Rico la Asamblea Legislativa ha utilizado en muchas ocasiones los cuerpos o tribunales administrativos a nivel apelativo. Los más conocidos son la Junta de Apelaciones de Construcción, la Comisión Industrial, la Comisión de Investigación, Procesamiento y Apelación (C.I.P.A.), la Junta de Apelaciones del Sistema de Instrucción Pública, y

---

[1] Este resultado se debió a que la jurisdicción de J.A.S.P., en comparación con el anterior organismo apelativo de personal fue sustancialmente ampliada, pues se incluyó como administradores individuales y sujetos a su jurisdicción, a los municipios y a las agencias que estaban incluidas en el servicio exento o en el servicio sin oposición bajo la anterior ley.

la Comisión de Querellas Municipales. La creación de estos consejos con poderes cuasi-judiciales se justifica por varias razones: (1) la experiencia y especialización de cada uno; (2) la uniformidad de sus fallos y remedios, y (3) el costo tan bajo de la litigación administrativa para los afectados. En los tribunales administrativos apelativos, el litigante no necesita representación legal y usualmente se enfrenta a los asuntos en sus méritos sin enredarse en los tecnicismos que entorpecen los procedimientos en los tribunales. K. Davis, *Discretionary Justice: A Preliminary Inquiry*, 1969, pág. 145; véase también a R. Serrano Geyls e I. García de Serrano, *El control de la discreción administrativa: La Junta de Apelaciones del Sistema de Instrucción Pública de Puerto Rico*, 32 Rev. C. Abo. P.R. 397 (1971).

Finalmente, los tribunales administrativos apelativos contribuyen a descongestionar los tribunales al proveer un foro que en primera instancia recibe la prueba y mediante conclusiones de hecho y derecho formula sus decisiones. Esto evita que los magistrados tengan que celebrar juicios *de novo* al revisar las decisiones administrativas. Se limita entonces su intervención a examinar las cuestiones de hecho y de derecho según surjan del récord administrativo. Así pueden resolver rápidamente las controversias traídas ante su consideración. Desde *Crowell* v. *Benson*, 285 U.S. 22 (1932), se ha endosado la delegación del poder judicial a organismos administrativos y se han reservado los tribunales la facultad de revisar sus decisiones como intérpretes finales del derecho aplicable: "Parte esencial de reformas a los sistemas de justicia en muchas jurisdicciones, debe añadirse, es el reconocimiento de que organismos no judiciales deben atender asuntos que hasta cierto tiempo se consideraron de la competencia exclusiva de los tribunales." *Hernández Denton* v. *Quiñones Desdier*, 102 D.P.R. 218, 223 (1974).

No obstante lo anterior en el 1977, la Asamblea Legislativa aprobó la Ley de la Guardia Municipal, *supra*. Dada la

naturaleza y la importancia de su encomienda, este cuerpo de vigilancia al nivel municipal por disposición de ley tiene un sistema de personal muy parecido al de la Policía de Puerto Rico con clasificación a base de rango y con el concepto de sanciones, de faltas leves y graves. También se estableció un procedimiento disciplinario que en los casos de faltas graves provee al afectado una oportunidad de ser oído con un recurso de "apelación" al Tribunal Superior de la decisión adversa del Alcalde, 21 L.P.R.A. sec. 1071.

Esto significó un retroceso temporero del principio de integración y uniformidad de la Ley de Personal. En el 1980, teniendo presente tanto la Ley de Personal como la de Guardias Municipales, el legislador en la Ley Orgánica de los Municipios de 1980 (21 L.P.R.A. sec. 2001 *et seq.*), dispuso un solo y común recurso de revisión a la Junta de Apelaciones del Sistema de Administración de Personal para todos los empleados municipales de carrera. (²)

Al no hacer excepción a esta norma procesal, quedó demostrada la intención de la Asamblea Legislativa de no abandonar el propósito de uniformidad e integración destacado por este Tribunal en *Delgado Rivera* v. *Alcalde de Carolina,* 109 D.P.R. 5, 9 (1979):

Al aprobar la Asamblea Legislativa la vigente Ley de Personal concentró sus esfuerzos en precisar una política pública de reafirmación del principio de mérito, haciéndolo extensivo a todos los sectores del empleo público. Sobre las bases que ofrece esa declaración de política pública se estableció en la Ley un sistema de personal "completo e inte-

---

(²) Bajo la anterior ley municipal que estaba vigente al momento de aprobarse la Ley de Personal de 1975, se disponía que para destituir un empleado era necesario una previa formulación de cargos y audiencia ante una Comisión compuesta de tres (3) personas nombradas por el Alcalde. De la resolución de la Comisión se podía solicitar revisión judicial ante el Tribunal Superior en un término de quince (15) días. Art. 93 de la Ley Núm. 142 de 1964 (21 L.P.R.A. sec. 1553). Este procedimiento que resultaba incompatible con la Sec. 7.14 de la Ley de Personal no fue armonizado con dicho estatuto hasta la aprobación de la nueva legislación municipal en 1980.

grado que incorpora los más modernos conceptos de la administración de personal." Exposición de Motivos, Leyes de Puerto Rico 1975, Parte 2, pág. 801. Así pues, resultó elemento fundamental de la nueva legislación los conceptos de integración y de uniformidad, de suerte que los empleados públicos de una u otra entidad gubernamental vieran igualmente garantizados los derechos y prerrogativas que son corolario del principio de mérito, Sec. 2.1, 3 L.P.R.A. sec. 1311.

El argumento de la recurrente, que reclama para los guardias municipales un tratamiento especial y aparte de todos los demás empleados municipales y estatales de carrera, es incompatible con toda la estructura jurídica creada por la Asamblea Legislativa para la administración del sistema de personal. La recurrente no ha señalado algún factor de calidad diferenciante de los empleados de carrera de la Guardia Municipal que nos mueva a interpretar que fue la intención legislativa el que se obviara la apelación a J.A.S.A.P. y se recurriese directamente al Tribunal Superior y así privar de esta forma al magistrado del beneficio de las determinaciones y de la experiencia en cuestiones de personal de dicho organismo especializado. A la luz de la trayectoria legislativa y del historial reseñado, no es posible inferir que el propósito del legislador fuera negar a los guardias municipales la especialización de J.A.S.A.P. en materia de apelaciones de empleados. *Delbrey* v. *Municipio de Carolina*, 111 D.P.R. 492 (1981); *Franco* v. *Municipio de Cidra*, 113 D.P.R. 260 (1982). La revisión por la Junta de Apelaciones del Sistema de Administración de Personal de las decisiones del Alcalde y del Comisionado de la Guardia Municipal en los casos de empleados municipales de carrera no es incompatible con el interés de la comunidad de que ese cuerpo policíaco sea autónomo en sus decisiones de personal. Por la naturaleza especial de sus funciones la ley claramente establece un período probatorio más largo para sus miembros que para los otros empleados de carrera del municipio y además faculta al Comisionado a imponer sanciones por faltas graves y leves me-

diante un procedimiento disciplinario. Al igual que en el caso de la Policía de Puerto Rico esta autonomía en asuntos de personal no es incompatible con la delegación del poder de revisión a un foro administrativo como la Junta de Apelaciones del Sistema de Personal.

Aun si aceptáramos la tesis de que la omisión de la Asamblea Legislativa tuvo el efecto de proveer dos foros alternos de revisión, el judicial y el otro a nivel administrativo, a base de la doctrina de jurisdicción primaria, la prudencia y autolimitación judicial aconsejarían que la intervención judicial se pospusiese hasta que el foro administrativo apelativo especializado resuelva la controversia. Se facilitaría de esta manera la pronta adjudicación de las controversias y la descongestión de los calendarios de los tribunales. Independientemente de qué ruta tomemos, el empleado afectado tendría que ir primero ante la Junta de Apelaciones del Sistema de Administración de Personal.

▬ En su obligación de desentrañar y hacer que prevalezca el propósito legislativo, los tribunales deben evitar la interpretación de un estatuto que pueda conducir a resultados irrazonables o absurdos, *Passalacqua* v. *Municipio de San Juan,* 116 D.P.R. 618 (1985) ; *Lozada* v. *Antonio Roig Sucrs.,* 73 D.P.R. 266, 270 (1952) ; *In re Marín Báez,* 81 D.P.R. 274, 278 (1959) ; *Borinquen Furniture, Inc.* v. *Tribl. de Distrito,* 78 D.P.R. 902, 905 (1956). El propio Juez Marshall dijo en *Marbury* v. *Madison,* 5 U.S. 137, 176 (1803), que cuando dos leyes estén en conflicto las cortes deben determinar cuál de las reglas conflictivas debe prevalecer, siendo esto "de la esencia del deber judicial". Nuestra obligación fundamental, en estos casos, es imprimirle efectividad a la manifiesta intención legislativa y este estatuto debe prevalecer sobre la disposición literal de aquella ley que esté en conflicto con el objetivo del legislador. La interpretación judicial debe propiciar la realización del verdadero propósito de la ley. E. R. Bernier, *Aprobación e interpretación de las leyes en Puerto Rico,* San Juan,

Colegio de Abogados, 1963, Cap. XLVIII, pág. 230; 2 *Suther-land, Statutory Construction* Sec. 4926, pág. 462 (1943); *Roig Commercial Bank* v. *Buscaglia, Tes.*, 74 D.P.R. 986, 997–998 (1953). No debe prevalecer el lapsus o la inadvertencia al legislar sobre la idea central que dio vida al estatuto. *Calaf* v. *Sec. de Hacienda*, 76 D.P.R. 577, 583 (1954).

El desarrollo legislativo del recurso de apelación del empleado municipal a J.A.S.A.P., originado en la Ley de Personal de 1975 y reiterado en la Ley Orgánica de los Municipios de 1980, muestra suficiente afirmación de la intención del legislador de excluir cualquier otro procedimiento alterno, tal como el incorporado en la Ley de Guardias Municipales, y de reiterar la universalidad de la norma apelativa de la Ley de Personal.

Por otro lado, nuestro Código Civil en su Art. 6 dispone que "[l]a derogación [de una ley] es, o expresa o tácita. Es expresa cuando se declara literalmente por una ley posterior; es tácita cuando la nueva ley contiene preceptos que son o contrarios o irreconciliables con los de la anterior ley. La derogación de una ley derogatoria no restablece la primitiva ley derogada". 31 L.P.R.A. sec. 6.

La citada Ley Orgánica Municipal de 1980 al ordenar en su Art. 10.06 (21 L.P.R.A. sec. 3356) un procedimiento de vista administrativa y apelación para todos los empleados, entró en abierto conflicto con la correlativa disposición en la Ley de la Guardia Municipal. En estas circunstancias, aunque no hay una abolición expresa de las disposiciones de la Ley de Guardias Municipales que son incompatibles con la Ley Orgánica de los Municipios, sí hay una derogación tácita. En tal caso "la derogación expresa es superflua, porque basta que la Ley nueva dé una regulación distinta incompatible con la de la Ley antigua para que la nueva Ley prevalezca y prive de efecto a la precedente. Entonces se habla de derogación tácita, ya que la voluntad derogatoria resulta de la nueva disciplina jurídica que viene a sustituir a la precedente, por la imposibi-

lidad de que el nuevo ordenamiento coexista con el antiguo". R. Bonet, *Código Civil Comentado*, Madrid, Ed. Aguilar, 1962, pág. 36; *Pérez* v. *Sucesión Collado*, 19 D.P.R. 1061, 1063 (1913). "[C]uando los términos de una ley posterior son tan inconsistentes con los de una ley anterior que ambas no pueden subsistir juntas, se entenderá que la posterior ha enmendado implícitamente la anterior, especialmente cuando el resultado de tal interpretación es dar efectividad a la intención legislativa. [Citas.] La doctrina es igualmente aplicable cuando se trata de leyes especiales y leyes generales. Si las disposiciones de una y otra ley son irreconciliables, la ley general puede enmendar la especial. La cuestión se reduce siempre a una de intención legislativa." *A. J. Tristani* v. *Municipio*, 76 D.P.R. 758, 766 (1954). Véase: *Pueblo* v. *Dávila*, 47 D.P.R. 356, 361 (1934).

La más reciente ley reguladora del personal municipal, la Ley Núm. 146 de 1980, dispuso en su Art. 13.02 (21 L.P.R.A. sec. 3502) la derogación de la anterior Ley Municipal de 1960, así como de toda ley o parte de la misma que estuviere *en contravención* con el nuevo estatuto. Resulta patente la incompatibilidad entre los canales de apelación que ofrecen al empleado estas dos leyes, por lo que al producirse la abolición, no salva a la anterior su carácter especial supeditado al principio que "destaca la supremacía de la ley más reciente sobre la anterior" que además, versa sobre una materia especial que establece la política pública general del Estado respecto a cuestiones de personal. *Flamboyán Gardens* v. *Junta de Planificación*, 103 D.P.R. 884, 888 (1975).

■ No puede haber duda de que tomadas en conjunto la Ley de Personal de 1975 y la Ley Orgánica de los Municipios de 1980 nos llevan a la conclusión —mantenida por la interpretación sociológica que inclina el criterio judicial hacia

aquella solución que mejor capte el impacto del estatuto en términos de bienestar general y que mejor perciba la intención legislativa al adoptar la norma como enfilada a propiciar el interés público— de que la Asamblea Legislativa preservó el propósito original de establecer el recurso de apelación a la Junta de Apelaciones del Sistema de Administración de Personal para todos los empleados municipales, inclusive los miembros de la guardia municipal.

Al aprobar la nueva Ley Orgánica de los Municipios de 1980 la Asamblea Legislativa reafirmó su intención de que prevaleciera el principio de integridad y uniformidad que con tanto esmero había elaborado anteriormente. En ese contexto histórico la Sec. 11 de la Ley de Guardias Municipales al establecer un método apelativo distinto para los miembros de carrera de la fuerza disciplinados, fue una anomalía temporal revocada luego por la propia Asamblea Legislativa.

En estas circunstancias el señor Díaz Marín debe agotar la vía administrativa para que así el tribunal tenga el beneficio de las conclusiones de hecho y de derecho de esa entidad especializada que tanto valor y deferencia merecen. Reconociendo el estado indefinido de nuestro derecho cuando se originó la controversia de autos, también resolvemos trasladar el recurso a la Junta de Apelaciones del Sistema de Administración de Personal para que inmediatamente proceda a examinar los méritos de la revisión interpuesta por el recurrente. *Delgado Rivera* v. *Alcalde de Carolina,* supra.

Por las razones explicadas en esta opinión, *se dictará sentencia en la que se confirme la sentencia del tribunal de instancia y se trasladará el recurso a la Junta de Apelaciones del Sistema de Administración de Personal para ulteriores procedimientos.*