EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Alfonso Vargas Fernández<br><br>        Peticionario<br><br>              v.<br><br>Administración de los Sistemas de<br>Retiro de los Empleados del Gobierno<br>y la Judicatura<br><br>        Recurridos | Certiorari<br><br>2003 TSPR 53<br><br>158 DPR _____ |

Número del Caso: CC-2001-944


Fecha: 8 de abril de 2003


Tribunal de Circuito de Apelaciones:
                Circuito Regional I


Juez Ponente:
                Hon. Mildred G. Pabón Charneco


Abogada de la Parte Peticionaria:
                Lcda. Teresita Arzuaga Resto



Oficina del Honorable Procurador General:
                Lcda. Miriam Álvarez Archilla
                Procuradora General Auxiliar



Materia: Revisión de Decisión Administrativa




Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Alfonso Vargas Fernández

    Peticionario

       v.                                    CC-2001-944        CERTIORARI

Administración de los Sistemas
de Retiro de los Empleados del
Gobierno y la Judicatura

    Recurridos


    Opinión del Tribunal emitida por el Juez Asociado SEÑOR REBOLLO LÓPEZ


San Juan, Puerto Rico, a 8 de abril de 2003

En el presente recurso nos corresponde resolver si, a tenor con lo dispuesto en la Ley Núm. 45 de 5 de agosto de 1993[1] y la Ley Núm. 447 de 15 de mayo de 1951,[2] conocida como la Ley de Sistema de Retiro de los Empleados del Gobierno y sus Instrumentalidades, un empleado del Municipio de Bayamón tiene derecho a recibir los beneficios de una pensión por <u>incapacidad ocupacional</u> aun cuando el accidente que dio lugar a la incapacidad ocurrió en una fecha anterior a aquella en que su patrono, el Municipio de Bayamón, se convirtió en patrono participante del Sistema.

---

[1] Leyes de Puerto Rico, 1993, pág. 221.
[2] 3 L.P.R.A. secs. 761-788.

Veamos en detalle los hechos que dan lugar al presente recurso.

I

El señor Alfonso Vargas Fernández, aquí peticionario, comenzó a trabajar como chofer para el Municipio de Bayamón en el año 1978. El 27 de mayo de 1992, mientras se encontraba en el ejercicio de sus funciones, Vargas Fernández sufrió un accidente automovilístico que lo obligó a reportarse al Fondo del Seguro del Estado, en adelante el Fondo. Como consecuencia de este accidente, el peticionario sufrió múltiples fracturas y lesiones por las cuales el Fondo le reconoció y compensó las siguientes incapacidades: (i) diez por ciento (10%) en sus funciones fisiológicas generales por fractura de cuatro (4) costillas derechas; (ii) cinco por ciento (5%) en sus funciones fisiológicas generales por fractura en la clavícula derecha; (iii) quince por ciento (15%) en sus funciones fisiológicas por pérdida de brazo derecho; y (vi) cinco por ciento (5%) por "building L3-L4, L4-L5". Los por cientos de incapacidad fueron notificados al señor Vargas mediante decisión del Administrador del Fondo emitida el 21 de junio de 1994.

El 24 de mayo de 1995, Vargas Fernández solicitó de la Administración de los Sistemas de Retiro de los Empleados del Gobierno y sus Instrumentalidades, en adelante la Administración, los beneficios de una pensión por incapacidad no ocupacional al amparo de las

disposiciones de la mencionada Ley Núm. 447, ante. En la referida solicitud, Vargas alegó que había desarrollado una condición emocional que lo inhabilitaba para continuar en el servicio público. Esta pensión fue aprobada el 21 de febrero de 1997.

Posteriormente, por decisión del Administrador del Fondo de 2 de febrero de 1998, notificada el 3 de febrero de 1998, se determinó que la condición emocional que sufría el peticionario estaba relacionada con el accidente laboral ocurrido el 27 de mayo de 1992.[3] En vista de tal determinación, el 5 de mayo de 1998 Vargas Fernández solicitó de la Administración de Retiro un cambio de "pensión por incapacidad no ocupacional" a "pensión por incapacidad ocupacional". Dicha solicitud fue denegada por la Administración al concluir que, a la fecha del accidente, Vargas no era participante del Sistema de Retiro; ello por entender que su patrono, el Municipio de Bayamón, había ingresado al Sistema el 1 de enero de 1994; esto es, dos (2) años con posterioridad a la ocurrencia del accidente en cuestión.

De dicha determinación Vargas Fernández solicitó reconsideración y, habiéndose denegado la misma, recurrió en apelación a la Junta de Síndicos del Sistema de Retiro de los Empleados del Gobierno, en adelante la Junta de

---

[3] La referida condición fue diagnosticada por el Fondo como una "depresión mayor" y fue compensada a tenor con lo dispuesto en la Ley del Sistema de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. secs. 1-140.

Síndicos. Alegó, en síntesis, que cuando el Municipio de Bayamón ingresó al Sistema de Retiro, y satisfizo el monto de la obligación actuarial que conllevaba su ingreso, lo hizo con la condición de que todos los empleados que habían trabajado para el Municipio con anterioridad al 1 de abril de 1990 entraran al Sistema bajo la estructura de beneficios vigentes a esa fecha, es decir, con los mismos derechos y obligaciones que cualquier otro participante.

Adujo, además, que la condición pactada había tenido el efecto de retrotraer la fecha de ingreso al Sistema y que el hecho de que en el año 1995 se le hubiesen cotizado diez (10) años de servicios, a los efectos de su pensión por incapacidad no ocupacional, demostraba que el propio Administrador lo había considerado como "participante" o "miembro" del Sistema con anterioridad al 1 de enero de 1994. Fundamentó su contención en las disposiciones contenidas en la Ley Núm. 45 de 5 de agosto de 1995.[4]

Luego de varios incidentes procesales, la Junta confirmó la decisión de la Administración concluyendo que el peticionario no tenía derecho a recibir una pensión por incapacidad ocupacional toda vez que a la fecha de su accidente éste no fungía como "participante" del Sistema de Retiro. A tales efectos señaló que:

> Al realizar un estudio de la Ley Núm. 45, supra, y de la Resolución Núm. 93-04 de 7 de diciembre

---

[4] Esta ley fue aprobada con el propósito de ratificar la solicitud de ingreso al Sistema de Retiro que hiciera el Municipio de Bayamón mediante la Ordenanza Municipal Núm. 56 de 21 de junio de 1984.

de 1993, aprobada por la Junta [con el propósito de autorizar el ingreso del Municipio al Sistema], no se desprende que la participación del Municipio de Bayamón se retrotraería a una fecha anterior al 1 de enero de 1994, fecha en que dicho Municipio entra como participante del Sistema. Además, no puede aducirse que el costo de acreditación sufragado por el Municipio tiene el efecto de retrotraer la fecha de participación al Sistema.

....

El aplicar la retroactividad en la fecha de ingreso al Sistema al acreditar los servicios no cotizados, constituiría una enmienda a la Ley Núm. 447, ante. Como norma constitucional, la función de crear, enmendar o revocar leyes es función inherente del Poder Legislativo. Este foro administrativo no tiene dicho poder, por lo que nos vemos precisados a no aplicar la retroactividad en la fecha de ingreso al Sistema de Retiro por el Municipio de Bayamón.

....

Inconforme con la determinación de la Junta, Vargas Fernández recurrió --vía recurso de certiorari-- al Tribunal de Circuito de Apelaciones. El foro apelativo intermedio denegó el recurso de certiorari solicitado, sosteniéndose así la determinación de la Junta. En vista de ello, el peticionario recurrió, oportunamente, ante este Tribunal --vía certiorari-- imputándole a la Junta de Síndicos haber errado al:

... concluir que a partir del 1ro de enero de 1994 comenzaron a regir las aportaciones y beneficios de todos los empleados del municipio de Bayamón dado [sic] y que la participación de los empleados no se retrotraería a una fecha anterior al 1ro de enero de 1994.

... concluir que el aplicar la retroactividad en la fecha de ingreso al Sistema al acreditar los servicios no cotizados, constituye una enmienda

a la Ley Núm. 447 de 15 de mayo de 1951, según enmendada.

Expedimos el recurso. Contando con las comparecencias de las partes, y estando en condición de resolver el mismo, procedemos a así hacerlo.

II

Antes de comenzar el análisis del asunto que hoy nos ocupa es menester que expongamos brevemente el trasfondo fáctico que precedió a la aprobación de la mencionada Ley Núm. 45, ante, y las circunstancias particulares que rodearon el ingreso del Municipio de Bayamón al Sistema de Retiro. Veamos.

A tenor con lo que al día de hoy dispone la Ley de Retiro del Personal del Gobierno de Puerto Rico, prácticamente toda persona que sea empleado del gobierno --incluyendo a los funcionarios y empleados regulares de los municipios-- está obligado a pertenecer al Sistema de Retiro y quedará sujeto a las disposiciones de su Ley Orgánica.[5] Calderón Morales v. Administración de los Sistemas de Retiro, 129 D.P.R. 1020, 1032 (1992). De este modo, hemos dispuesto que cuando una persona ingresa al servicio público acepta, como parte esencial de su contrato de empleo, los términos y condiciones

---

[5] El ingreso al Sistema de Retiro es discrecional únicamente para los Secretarios del Gobierno, los ayudantes del Gobernador de Puerto Rico, los jefes de agencias e instrumentalidades públicas, los miembros de comisiones y juntas nombradas por el Gobernador, el Contralor y los miembros de la Asamblea Legislativa.

establecidos en la Ley Núm. 447, ante. <u>Bayrón Toro</u> v. <u>Serra</u>, 119 D.P.R. 605, 617 (1987).

Ahora bien, ello no siempre fue así. Cuando el Municipio de Bayamón tramitó el ingresó de sus empleados al Sistema de Retiro, entre los años 1984 al 1994, la participación de los funcionarios y empleados municipales en dicho sistema se consideraba opcional.[6] A esa fecha la Ley Núm. 447, ante, establecía <u>ciertos requisitos</u> que debían ser satisfechos siempre que un municipio interesara ingresar al Sistema de Retiro. Por ejemplo, se requería que la Asamblea Municipal aprobara una ordenanza solicitando la inclusión de los empleados de su municipio al Sistema y que se radicara copia de la misma ante el Administrador.[7] Además, se requería que se validara y ratificara la ordenanza mediante un referéndum que debía celebrarse entre los empleados del municipio en cuestión.

---

[6] Así fue hasta la aprobación de la Ley Núm. 3 de 13 de febrero de 1996, la cual estableció la obligatoriedad de la participación de los funcionarios y empleados municipales en el Sistema de Retiro del Gobierno.

[7] Así lo disponía el Artículo 22 de la Ley Núm. 447, ante, al señalar, en lo pertinente:

> En el caso de un municipio la ordenanza que adopte la asamblea municipal con estos fines no será válida a los efectos de las secs. 761 et seq. de este título, hasta tanto los empleados elegibles de tal municipio la ratifiquen mediante referéndum. El referéndum se conducirá mediante votación secreta y escrita, previa la orientación correspondiente a los empleados sobre el propósito y los alcances de la ordenanza. Se considerará ratificada la ordenanza si dos terceras partes, por lo menos, de los empleados elegibles votan a favor de la misma.
>
> Una copia debidamente certificada de esta resolución u ordenanza deberá radicarse con el Administrador. . . .

En armonía con tales requerimientos, el 21 de junio de 1984 la Asamblea Municipal de Bayamón aprobó una ordenanza en la cual se solicitó de la Junta de Síndicos el ingreso de los empleados del referido Municipio al Sistema de Retiro de los Empleados del Gobierno. A tenor con lo que disponía en ese momento el Artículo 22 de la Ley Núm. 447, ante, los empleados del Municipio de Bayamón ratificaron la referida ordenanza mediante un referéndum celebrado el 22 de noviembre de 1985.[8] Transcurridos dos (2) años sin que se hubiese aprobado el ingreso del Municipio al Sistema, y en consideración a que la Ley Núm. 447, ante, había sufrido varias enmiendas que tuvieron el efecto de alterar los beneficios y derechos bajo los cuales los empleados aceptaron unirse al Sistema, fue necesario celebrar un segundo referéndum el 9 de junio de 1987.

A tres (3) años de este segundo referéndum, y sin que la Junta hubiese aprobado aún el ingreso de los empleados del Municipio al Sistema de Retiro, la Asamblea Legislativa aprobó la Ley Núm. 1 de 16 de febrero de 1990, enmendatoria la misma de la Ley Núm. 447, ante. Esta Ley, la cual entraría en vigor el 1 de abril de 1990, modificó significativamente la estructura de beneficios para los nuevos participantes y aumentó las aportaciones que éstos tendrían que satisfacer como miembros del Sistema.

---

[8] El resultado de dicho referéndum fue enviado al Administrador de los Sistemas de Retiro y desde ese momento se comenzó a trabajar en el estudio actuarial para determinar la obligación que conllevaría el ingreso del Municipio al Sistema.

Ante tales circunstancias, el 5 de agosto de 1993 la Asamblea Legislativa aprobó la antes mencionada Ley Núm. 45. La Exposición de Motivos de esta Ley resume las razones que motivaron la acción legislativa y sus propósitos. En ésta se dispuso lo siguiente:

> Debido a que la Ley Orgánica del Sistema está constantemente sujeta a revisión legislativa, pueden ocurrir cambios en la estructura de beneficios a la que tienen derecho los empleados gubernamentales.
>
> El referéndum se celebró el día 22 de noviembre de 1985 pero, debido a la complejidad del ingreso propiamente, entre la fecha de celebración y aprobación de la ordenanza municipal y el consiguiente referéndum celebrado el día 9 de junio de 1997, ocurrieron cambios significativos en la legislación que alteraron los beneficios y derechos bajo los cuales los empleados municipales de Bayamón aceptaron unirse al Sistema.
>
> <u>Para remediar esta situación y honrar la verdadera intención consignada por los empleados en el referéndum, debe establecerse que el estado de derecho vigente a la fecha de celebración del referéndum, sea lo que determine cuál es la estructura de beneficios aplicable</u>. (Énfasis suplido.)

A tono con tal intención legislativa, en la parte dispositiva del referido estatuto, específicamente en su Artículo 4, se estableció lo siguiente:

> El ingreso al Sistema de los empleados del Municipio de Bayamón, se hará de conformidad con las disposiciones de la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, de manera que los empleados que hubieren estado trabajando en dicho municipio con anterioridad al 1ro. de abril de 1990, <u>quedarán sujetos a las condiciones de matrícula y tendrán derecho de participar en las anualidades y beneficios que provee el Sistema de Retiro, según estaban vigentes a la fecha de celebración del referéndum.</u> (Énfasis suplido.)

Así las cosas, el 7 de diciembre de 1993 la Junta de Síndicos emitió resolución aprobando el ingreso del Municipio de Bayamón al Sistema de Retiro, convirtiendo en "participantes del Sistema" a los funcionarios y empleados del referido municipio. En dicha resolución se especificó que la inclusión del Municipio de Bayamón como participante del Sistema de Retiro <u>sería efectiva el 1ro de enero de 1994</u>.

Con este trasfondo fáctico en mente pasamos a analizar la controversia ante nos. Al así hacerlo discutiremos en forma conjunta los errores señalados.

III

En su escrito ante nos alega el peticionario Vargas Fernández que incidió la Administración, y la Junta de Síndicos al confirmar su determinación, al concluir que a partir del 1 de enero de 1994 comenzaron a regir las aportaciones y beneficios de todos los empleados del Municipio de Bayamón y que, por consiguiente, la participación de los empleados no se retrotraería a una fecha anterior a ésta. Fundamenta su contención en lo dispuesto en el precitado Artículo 4 de la Ley Núm. 45,[9]

---

[9] El peticionario cita, además, las condiciones consideradas al momento de determinarse la obligación actuarial que debía satisfacer el Municipio al ingresar al Sistema de Retiro. Dichas condiciones, las cuales fueron mencionadas en una comunicación hecha por el Administrador del Sistema al Alcalde el 8 de noviembre de 1993, reiteran lo dispuesto en el citado Artículo 4 de la Ley Núm. 45 de 5 de

ante, argumentando que la referida disposición debe ser interpretada en el sentido de que al momento de negociarse el ingreso del Municipio de Bayamón al Sistema de Retiro todas las partes envueltas --entiéndase el Municipio, la Administración y los empleados-- tuvieron la intención de retrotraer la fecha de participación de los empleados del Municipio al 1 de abril de 1990. A tales efectos, arguye que en virtud de tal disposición debe entenderse que a la fecha de su accidente éste era participante del Sistema y que, como tal, cualifica para obtener el cambio de pensión solicitado. No le asiste la razón. Veamos por qué.


A

En la Sesión Ordinaria de la Asamblea Legislativa de 1951 se aprobó un sistema general de pensiones para los empleados públicos bajo las disposiciones de la Ley Núm. 447 de 15 de mayo de ese año.[10] En el Artículo 1 de esta Ley se dispuso que el referido sistema se establecería en la fecha de vigencia de la ley y comenzaría a aplicarse desde el 1ro de enero de 1952, fecha en que comenzarían a

---

agosto de 1993. En vista de ello, hemos entendido procedente limitar la discusión del presente asunto a lo relativo al Artículo 4 de la citada Ley.

[10] Esta ley fue denominada "Ley de Retiro del Personal del Gobierno de Puerto Rico". El propósito principal de esta pieza legislativa fue brindarle a los empleados públicos una seguridad económica al retirarse por años de servicio o por incapacidad. Los fondos de este Sistema de Retiro se utilizan en beneficio de los participantes de su matrícula, incluyendo a sus dependientes y beneficiarios, para el pago de anualidades por incapacidad ocupacional y no ocupacional, anualidades por retiro y beneficios por defunción. 33 L.P.R.A. sec. 761.

regir las aportaciones y beneficios allí dispuestos. Además, se estableció que la "fecha de aplicación del Sistema" sería el 1ro de enero de 1952, <u>excepto en los casos de las empresas públicas y los municipios, para los cuales la fecha de aplicación sería la fecha del comienzo de su participación en el Sistema.</u>

Por su parte, el Artículo 22 de la Ley Núm. 447, tal y como regía a la fecha de los hechos ante nos, disponía que en el caso específico de los municipios que optaran por ingresar al Sistema de Retiro de los Empleados del Gobierno, <u>la fecha de aplicación del Sistema sería el primero de enero o el primero de julio después de la fecha de aprobación de la Junta</u>. 3 L.P.R.A. sec. 782 (según estuvo vigente hasta la aprobación de la Ley Núm. 3 de 13 de febrero de 1996). Esta fecha de aplicación pautaría el comienzo de la participación al Sistema de los nuevos miembros y establecería el inicio de las aportaciones y beneficios establecidos en la ley.

De las disposiciones anteriormente citadas surge con meridiana claridad que en el caso de autos la "fecha de aplicación del Sistema" para los empleados del Municipio de Bayamón debía ser el <u>1 de enero o el 1 de julio del año 1994</u>. Ello considerando que la Junta de Síndicos aprobó el ingreso del Municipio el 7 de diciembre de 1993. Ahora bien, al determinar en cuál de estas dos fechas realmente comenzaron a regir las aportaciones y beneficios de los empleados del Municipio de Bayamón precisa que evaluemos

la Resolución que a tales efectos emitió la Junta en el

caso ante nos. En lo pertinente, esta Resolución dispuso:

> Por cuanto: La Junta de Síndicos de este Sistema de Retiro acordó aceptar el pago inicial [del costo actuarial del ingreso del Municipio de Bayamón] con posterioridad a la <u>fecha de ingreso de 1ro. de enero de 1994</u>, ya que el Banco Gubernamental de Fomento le aprobó un empréstito a dicho Municipio con ese propósito, pero le será entregada la cantidad acordada con posterioridad a la fecha antes señalada;

> Por cuanto: <u>En virtud de todo lo anterior, y según lo pactado, convenido y acordado, esta Junta aceptó y aprobó la inclusión del Municipio de Bayamón como participante del Sistema de Retiro, efectivo al 1ro. de enero de 1994</u>, según lo dispuesto en Reunión Ordinaria celebrada el día 7 de diciembre de 1993, cuya Minuta se hace formar parte íntegra de esta Resolución como Anejo I;

> Por tanto: RESUÉLVASE POR ESTA JUNTA DE SÍNDICOS, <u>aceptar y aprobar la inclusión del Municipio de Bayamón como participante de este Sistema de Retiro, efectivo el 1ro. de enero de 1994</u>. (énfasis suplido).

> ....

Una simple lectura de la Resolución transcrita es más

que suficiente para concluir que el <u>1ro de enero de 1994</u>

fue la fecha que la Junta de Síndicos dispuso como la

"fecha de aplicación del Sistema" a los efectos de que

comenzaran a regir las participaciones de los empleados

del Municipio en el plan de retiro de los empleados

públicos, fecha que es la aplicable a los hechos del caso

de autos. Adviértase que en cada uno de los párrafos

citados se hace alusión al 1ro de enero de 1994 como la

"fecha de ingreso" al Sistema, <u>estableciéndose</u>

expresamente que la inclusión del Municipio como participante del mismo sería efectiva de ahí en adelante.

Lo anterior, definitivamente, no está reñido con lo dispuesto en el precitado Artículo 4 de la Ley Núm. 45, ante. Ya hemos señalado que en ésta se estableció que los empleados que hubiesen estado trabajando en el Municipio de Bayamón con anterioridad al 1 de abril de 1990 quedarían sujetos a las condiciones de matrícula y tendrían derecho a participar de las anualidades y beneficios vigentes a la fecha de la celebración del segundo referéndum; esto es, al 9 de junio de 1987. Tal y como se desprende de la Exposición de Motivos de la citada Ley, ello se hizo con el único fin de que las enmiendas efectuadas a la Ley Núm. 447, ante, las cuales entraron en vigor el 1 de abril de 1990, no afectaran los derechos y obligaciones de los empleados del Municipio de Bayamón, una vez éstos ingresaran al Sistema.[11]

El hecho de que se le haya permitido a Vargas Fernández disfrutar de la estructura de beneficios vigente, con anterioridad al 1 de abril de 1990, constituyó una medida de justicia social que no puede ser interpretada en el sentido que reclama el peticionario. Evidentemente la Ley Núm. 1 de 16 de febrero de 1990 establecía condiciones y beneficios que resultaban ser

---

[11] Ello en vista de que cuando éstos expresaron su deseo de ingresar al Sistema de Retiro, en el referéndum del 1987, lo hicieron en el entendido de que entrarían bajo las condiciones existentes a esa fecha y no bajo las establecidas al aprobarse la Ley Núm. 1 de 1990.

menos beneficiosos que los contenidos bajo la estructura vigente a la fecha en que los empleados del Municipio ratificaron la solicitud de ingreso al Sistema de Retiro. Dicha ratificación hubiese resultado en un ejercicio fútil e ineficaz si luego de efectuada la misma hubiesen cambiado por completo las condiciones bajo las cuales se encontraba a esa fecha el plan de retiro del Gobierno. Definitivamente era necesario honrar la verdadera intención consignada por los empleados en el referéndum y así se hizo.

Ahora bien, adviértase que lo dispuesto en el Artículo 4 de la Ley que nos ocupa únicamente atendía el asunto relativo a las condiciones de matrícula y beneficios que aplicarían a los empleados del Municipio una vez entraran a formar parte de la matrícula del Sistema. <u>En ningún momento se expresó ni dispuso que la fecha de ingreso al Sistema se retrotraería a una fecha distinta a la que correspondía en virtud del Artículo 1 de la Ley Núm. 447, ante</u>.

Todo lo contrario; si examinamos el Artículo 3 de esta Ley inmediatamente advertimos que la intención perseguida era exactamente lo opuesto. En este artículo el legislador expresamente dispuso que "[l]a fecha de aplicación del Sistema ser[í]a el 1ro. de julio de 1993 o el 1ro. de enero de 1994, según lo que ac[ordara] el Municipio de Bayamón con la Junta de Síndicos." Siendo así, no nos convence del argumento del peticionario a los

efectos de que lo dispuesto en esta Ley tuvo el efecto de retrotraer su fecha de ingreso al Sistema a una anterior al 1ro de enero de 1994. Las disposiciones de esta Ley, definitivamente, no sustentan una conclusión a tales efectos.

Es evidente que el fin perseguido por la Asamblea Legislativa al promulgar la Ley Núm. 447 era asegurar que los empleados del Municipio entraran a formar parte del Sistema de Retiro bajo las condiciones existentes al momento en que aceptaron unirse a éste y no convertirlos en "participantes" en una fecha anterior al 1 de enero de 1994; es decir, una fecha anterior a la que estableció la Junta al momento de aprobar su ingreso.

En mérito de lo expuesto, forzosa resulta ser la conclusión de que la Junta de Síndicos actuó correctamente al confirmar la decisión emitida por la Administración de los Sistemas de Retiro a los efectos de que el Municipio de Bayamón, y por ende sus empleados, entraron a formar parte de la matrícula del Sistema de Retiro el 1ro de enero de 1994 y no el 1ro de abril de 1990 como alega ante nos el peticionario. Concluir lo contrario daría a esta pieza legislativa un significado ajeno al propósito perseguido por la Asamblea Legislativa al momento de su aprobación.

Es principio cardinal de hermenéutica que al interpretar una disposición de ley, los tribunales deben considerar cuáles fueron los fines perseguidos por la

Asamblea Legislativa al aprobarla y nuestra determinación debe atribuirle un sentido que asegure el resultado que originalmente se quiso obtener. En estos casos nuestra obligación fundamental debe ser imprimirle efectividad a la intención legislativa, propiciando de esta forma la realización del propósito que persigue la ley. Irizarry v. Johnson & Johnson Consumer Products, Inc., res. el 27 de enero de 2000, 2000 T.S.P.R. 15; Emilio Dorante v. Wrangler, res. el 27 de abril de 1998, 98 T.S.P.R. 50; Vázquez v. A.R.P.E., 128 D.P.R. 513, 523-524 (1991); Chase Manhattan Bank v. Municipio de San Juan, 126 D.P.R. 759, 766 (1990); Díaz Marín v. Municipio de San Juan, 117 D.P.R. 334, 342-343 (1986).

El simple hecho de que estemos interpretando una pieza legislativa que crea un derecho al disfrute de una pensión no significa que debamos obviar la intención legislativa que propició la creación de la misma. La normativa establecida por este Tribunal a los efectos de que las disposiciones estatutarias con propósitos remediales deben ser interpretadas liberalmente a favor del beneficiario[12] y que la fuerza y efecto de éstas no deben conformarse estrictamente a los términos literales del estatuto,[13] no significa que en nuestra tarea

---

[12] Véase: Acuña v. Junta de Retiro, 58 D.P.R. 94 (1941); In re Castro y Torres Braschi, 73 D.P.R. 564 (1952); Sánchez v. A.S.R.E.G.J., 116 D.P.R. 372 (1985).

[13] Véase: Calderón Morales v. Adm. de Sistemas de Retiro, 129 D.P.R. 1020, 1034 (1992).

interpretativa podamos obviar el claro propósito perseguido por el legislador al promulgarlas.

**B**

Tampoco podemos avalar la contención del peticionario a los efectos de que el hecho de que en el año 1997 se le hubiese aprobado una pensión por incapacidad no ocupacional, reconociéndose que tenía, por lo menos, diez (10) años de servicios acreditados, significa que éste era miembro del Sistema de Retiro con anterioridad al 1 de enero de 1994.

La Ley Núm. 447, ante, define los "servicios acreditables" como aquellos servicios anteriores y posteriores a la fecha de aplicación del Sistema. 3 L.P.R.A. sec. 763. El término "servicio anterior" ha sido definido como todo servicio que, <u>como empleado y con anterioridad a la fecha de aplicación al Sistema</u>, hubiere prestado un participante, y por el cual recibirá el crédito que corresponda, según lo dispuesto en el inciso (c) del Artículo 5 de la Ley, 3 L.P.R.A. sec. 765.[14] Es

---

[14] Este inciso dispone:

> **Cómputo de los servicios.**--Para el cómputo de la duración de los servicios anteriores y posteriores a la fecha de aplicación del Sistema y hasta el 1ro de abril de 1990, según sea el caso, regirá la escala siguiente: nueve (9) o más meses de servicio durante un año fiscal serán considerados como un año de servicio; seis (6) a nueve (9) meses de servicio serán considerados como tres cuartas (3/4) partes de un año de servicio y tres (3) a seis (6) meses de servicio serán considerados como medio (1/2) año de servicio. Menos de tres meses de servicio no serán considerados para los efectos de este cómputo, ni menos de quince (15) días de servicio durante el mes serán

decir, el término "servicio anterior" abarca <u>todo</u> servicio prestado por un participante, <u>independientemente de la fecha de su ingreso al Sistema</u>, siempre que el mismo cualifique para ser acreditado de acuerdo a lo establecido a esos efectos en el referido Artículo 5.

Lo anterior explica que en ciertos casos pueda darse <u>la anomalía</u> de que al momento de ingresar al Sistema de Retiro alguno de los participantes pueda tener acreditados varios años de servicio. Esto fue exactamente lo ocurrido en el caso del peticionario Vargas Fernández. Al momento de su ingreso al Sistema de Retiro éste contaba con varios años de servicio, algunos de los cuales le fueron acreditados como "servicios prestados con anterioridad a la fecha de aplicación". Ello permitió que a sólo un (1) año de su ingreso al Sistema éste fuera elegible a una pensión por incapacidad no ocupacional por haber desarrollado una condición emocional que tuvo el efecto de inhabilitarlo total y permanentemente para el servicio público. Ello, naturalmente, <u>no</u> significa que la fecha de aplicación al Sistema pueda quedar alterada por los años de servicio acreditados.

_____

considerados como un mes de servicio. No se acreditará más de un año de servicio por todos los servicios prestados por un participante durante un año fiscal. De conformidad con lo dispuesto en la sec. 766c de este título, los servicios prestados por todo nuevo participante se computarán a base de meses completos. La Junta prescribirá en sus reglas el número de horas o días que habrá de constituir un mes de servicio y la equivalencia de los servicios prestados por funcionarios o empleados públicos a base de retribución que no fuere por sueldo mensual.

IV

Lo anteriormente expuesto no dispone por completo de la controversia ante nos; es menester dilucidar qué efecto, si alguno, debe tener el hecho de que la incapacidad del peticionario se haya manifestado en una fecha posterior al ingreso de éste al Sistema de Retiro. Veamos.

A

Habiendo concluido que Vargas Fernández entró a formar parte de la matrícula del Sistema de Retiro el 1 de enero de 1994 es evidente que al 27 de mayo de 1992, fecha del accidente laboral sufrido por el peticionario, éste no era "participante" del Sistema de Retiro de los Empleados del Gobierno. Siendo así, la única conclusión posible en el presente caso es a los efectos de que <u>a esta fecha no existía obligación contractual alguna que obligara al Sistema de Retiro a otorgar al peticionario una pensión por una incapacidad surgida a consecuencia de un accidente sufrido en el curso de su empleo</u>. Lo antes expuesto se desprende claramente de lo dispuesto en el Artículo 9 de la Ley Núm. 447, 3 L.P.R.A. sec. 769, donde se expresa que:

> Todo <u>participante</u> que, como resultado de una incapacidad que se origine por causa del empleo y surja en el curso del mismo, quedare incapacitado para el servicio, tendrá derecho a recibir una anualidad por incapacidad ocupacional, siempre que:

(a)   Se recibiere suficiente prueba médica en cuanto a la incapacidad mental o física del participante conforme a los criterios que mediante reglamento fije el Administrador.

(b)   El <u>participante</u> o el patrono, de acuerdo con los reglamentos de la Junta, notifique al Administrador con respecto a dicha incapacidad.

(c)   Que el Fondo del Seguro del Estado determine que el accidente o enfermedad provino de cualquier función del trabajo o que sea inherentemente relacionado al trabajo o empleo.

(d)   El <u>participante</u> tendrá que radicar la solicitud, sustentada con suficiente prueba médica, dentro de los ciento ochenta (180) días en que se relacione la condición por la cual radica su solicitud.[15] (énfasis suplido).

Un análisis del texto de la disposición transcrita revela que el beneficio de pensión por incapacidad ocupacional dispuesto en esta Ley <u>sólo puede ser reclamado por aquellos servidores públicos que, a su vez, ostenten la cualidad de "participante" del Sistema de Retiro.</u> Este término ha sido definido en la ley como "todo empleado <u>acogido</u> al Sistema o que <u>pertenezca</u> a su matrícula."[16] 3

---

[15] La Ley Núm. 305 de 24 de septiembre de 1999 enmendó los incisos (c) y (d) de este Artículo. Previo a la aprobación de esta Ley el inciso (c) leía: "la incapacidad fuere indemnizable de acuerdo con las disposiciones de las secs. 1 et seq. del Título 11." Esta ley de 1999 también incorporó el inciso (d) a este artículo.

[16] El término "empleado" ha sido definido en la ley como:
[T]odo funcionario o empleado del Gobierno de Puerto Rico, o de sus instrumentalidades, o de sus municipios, siempre que dicho empleado prestare servicios continuos en un cargo o empleo. El referido término incluirá:
(a)      A los miembros del Cuerpo de la Policía de Puerto Rico;
(b)      a los Jueces de Paz de Puerto Rico;
(c)      a los funcionarios electivos del Pueblo de Puerto Rico y empleados de la Asamblea Legislativa;

L.P.R.A. sec. 763 (énfasis suplido). Ello significa que para ser acreedor de los beneficios dispuestos en esta sección no es suficiente con que el incidente que provoque la incapacidad haya surgido en el curso del empleo y se origine a consecuencia del mismo. Además, es <u>indispensable</u> que a ese momento ya el solicitante ostente la cualidad de "miembro" o "participante" del Sistema. Es decir, en el momento en que ocurre el incidente que da inicio a la cadena de eventos que finalmente ocasiona la incapacidad, ya el empleado <u>tiene</u> que ser parte de la matrícula del Sistema de Retiro.

Ahora bien, ¿qué efecto, si alguno, tendría el hecho de que al momento en que se manifieste la condición incapacitante ya el empleado figure como participante del Sistema de Retiro? Esto es, nos enfrentamos a una situación en que, aun cuando a la fecha de la ocurrencia del accidente, que pone en movimiento la cadena de eventos que provoca la incapacidad, el empleado no era participante del Sistema, cuando dicha incapacidad se manifesta, e inhabilita al empleado para el servicio público, ya éste forma parte de su matrícula. ¿Podemos, entonces, retrotraer a la fecha del accidente la condición de "participante" que ostentaba el peticionario al momento

---

(d)     a los funcionarios y empleados de las empresas públicas;
(e)     a los funcionarios y empleados de los municipios, y
(f)     al personal irregular que se emplee conforme a las disposiciones de las secs. 711 a 711g de este título.

de ser relacionada su condición? Contestamos dicha interrogante, igualmente, en la negativa. Veamos.

Tal y como surge del precitado Artículo 9 de la Ley Núm. 447, ante, para que un empleado público pueda ser elegible a una anualidad por incapacidad ocupacional se requiere que estén presentes tres requisitos básicos: (i) que el empleado ostente la cualidad de "participante del Sistema de Retiro"; (ii) que la incapacidad de que se trata se haya originado por causa del empleo y (iii) que la referida incapacidad haya surgido en el curso de su empleo.[17] Es decir, se requiere una conexión directa, o una relación causal, entre el incidente o suceso que provoca la incapacidad y la incapacidad misma. Es precisamente ese nexo el que hace que la incapacidad sea clasificada como una "ocupacional".

Ausente la cualidad, o el requisito, de "participante" en la etapa en que ocurre el incidente que inicia la cadena de causalidad que finalmente inhabilita al empleado para el servicio público, sería inapropiado hablar de una incapacidad ocupacional. Adviértase que para ser acreedor de este beneficio se requiere que la incapacidad se origine por causa del empleo y surja en el curso del mismo. Ello significa que necesariamente tiene que existir un vínculo entre el incidente que eventualmente incapacita al participante y su empleo.

---

[17] **Presentes dichos requisitos, entonces, el participante tendrá que cumplir con los demás criterios dispuestos en el Artículo 9 de la ley.**

Ahora bien, no se trata de cualquier empleo, sino de uno reconocido como tal a los efectos de la estructura actuarial vigente a esa fecha en el Sistema de Retiro.

Siendo así, es evidente que no puede ser considerado como un "empleo", a los efectos de concederse los beneficios que reconoce la ley, aquél que ofrece un patrono que no pertenece a la matrícula del Sistema o, lo que es lo mismo, aquél que ostenta un empleado "no participante" del Sistema. No existiendo tal "empleo", para todos los efectos prácticos relacionados con el Sistema de Retiro, tampoco puede existir el vínculo requerido entre éste y la incapacidad que se alega.

Como expresáramos anteriormente, cuando Vargas Fernández sufrió el accidente laboral que eventualmente provocó la condición emocional relacionada por el Fondo, éste no era "participante" del Sistema de Retiro. Siendo así, es evidente que no existe la conexión o nexo requerido a los efectos de una incapacidad ocupacional. Es la necesidad de tal conexión la que hace que la cualidad de "participante" tenga que estar presente tanto en el momento en que ocurre el suceso que da inicio a la incapacidad como en el instante en que se manifiesta la misma. Sólo así podría existir la conexión entre "incapacidad" y "empleo" requerida en la ley.

A la luz de los fundamentos esbozados, resolvemos que para que un empleado público pueda beneficiarse de la anualidad por incapacidad ocupacional que contempla el

Artículo 9 la Ley Núm. 447, ante, es <u>indispensable</u> que a la fecha del incidente que provoca la incapacidad que lo inhabilita éste ya figure como participante del Sistema de Retiro.

Concluir lo contrario, necesariamente, conllevaría que demos a este estatuto un efecto retroactivo que <u>definitivamente</u> no fue contemplado por el legislador al momento de su aprobación. Ante tales circunstancias, se impone lo dispuesto en el Artículo 3 de nuestro Código Civil, 31 L.P.R.A. sec. 3, a los efectos de que "las leyes no tendrán efecto retroactivo, si no dispusieren expresamente lo contrario."

En ocasión de interpretar el referido estatuto en <u>Nieves Cruz</u> v. <u>Universidad de Puerto Rico</u>, res. el 31 de mayo de 2000, 2000 T.S.P.R. 78, citando a Puig Peña, señalamos que "la retroactividad de una norma se justifica únicamente en casos aislados, 'por determinadas y supremas circunstancias', que hayan sido establecidas concretamente por el legislador." En dicha ocasión fuimos enfáticos al sostener que "la intención de la Asamblea Legislativa de darle efecto retroactivo a una ley, por ser un acto excepcional, 'debe aparecer expresamente o surgir claramente del estatuto'." *Ibid*. (citas omitidas). Advertimos, además, que la retroactividad debe haber sido expresada afirmativamente en el texto de la ley. *Ibid*.

Ahora bien, en el referido caso aclaramos que "en las escasas ocasiones en que nos hemos apartado de estas

normas imperiosas, <u>ello ha sido porque era obvio y patente el propósito legislativo</u>, en casos en los cuales la aplicación retroactiva de la legislación en cuestión era necesaria para corregir un grave mal social o para hacerle justicia a unos peticionarios." *Ibid*. (énfasis suplido y citas omitidas).

Es decir, en aquellos casos en que estén involucradas normas dirigidas a remediar males sociales o de derecho público será lícito recurrir a reglas de interpretación para determinar si al promulgar la ley el legislador tuvo la intención de dar efecto retroactivo al estatuto en cuestión. Como es sabido, dicha intención debe ser auscultada acudiendo, en primer lugar, al texto de la ley, pues cuando éste es claro y libre de ambigüedad no debe ser menospreciado bajo el pretexto de cumplir su espíritu. 31 L.P.R.A. sec. 14. Véase, además: <u>Irizarry</u> v. <u>Johnson & Johnson Consumer Products Inc.</u>, ante. Es por ello que hemos sostenido que el texto claro de una ley es la expresión por excelencia de la intención legislativa. *Ibid.*

En el caso ante nos, el estatuto bajo análisis es claro y no dispone, de modo alguno, que la condición de "participante" podrá retrotraerse a una fecha anterior a aquella en que el empleado ingrese al Sistema de Retiro. Por el contrario, un examen detenido de la Ley del Sistema de Retiro revela que la intención perseguida por el legislador al momento de promulgarla era que aplicara de

forma exclusiva a los participantes del Sistema del Retiro del Gobierno.

Ello se desprende claramente de lo dispuesto en su Artículo 1, el cual dispone fechas específicas de ingreso al Sistema para sus participantes. Nótese, además, que en el Artículo 9 de la Ley se hace alusión específica a los "participantes del Sistema" al referirse a aquellos que podrán recibir los beneficios de una pensión por incapacidad ocupacional. En fin, no hemos podido encontrar disposición alguna en la Ley ni el Reglamento del Sistema que autorice la concesión de beneficios por incapacidad ocupacional ante las circunstancias particulares del caso ante nos.

Finalmente, cabe señalar que este Tribunal ha establecido que "los participantes de un Sistema de Retiro del Gobierno tienen un derecho adquirido de naturaleza contractual", pero, a su vez, ha sido enfático al disponer que ese derecho "surge con el ingreso del empleado al Sistema". Véase: Bayrón Toro v. Serra, ante, a la pág. 618 (énfasis suplido). A la fecha de su accidente, repetimos, Vargas Fernández no era participante del Sistema de Retiro, por lo que no existía a este momento ningún derecho de naturaleza contractual que obligara al Sistema de Retiro a otorgar los beneficios de una pensión por incapacidad ocupacional.[18] Ello impide que pueda existir el

vínculo entre "empleo" e "incapacidad" requerido en la ley a los efectos de concederle a éste los beneficios de una anualidad por incapacidad ocupacional.[19]

V

Por los fundamentos antes expuestos, procede decretar la confirmación de la resolución emitida por el Tribunal de Circuito de Apelaciones en el presente caso, confirmatoria de la decisión emitida por la Junta de Síndicos.

Se dictará Sentencia de conformidad.

FRANCISCO REBOLLO LÓPEZ
Juez Asociado

---

[18] Ciertamente, ello explica el que Vargas Fernández no haya solicitado tales beneficios por las incapacidades físicas surgidas como consecuencia del accidente. Nótese que la pensión solicitada por Vargas en el año 1995 fue por una condición emocional desarrollada con posterioridad al accidente y no por las incapacidades surgidas como consecuencia del mismo.

[19] Así lo determinaron las agencias administrativas encargadas del cumplimiento de la Ley Núm. 447, ante. Ya hemos visto que dicha interpretación, lejos de producir resultados inconsistentes o contrarios al propósito de la ley, está a tono con el mismo. Tampoco podemos concluir que lleve a la comisión de injusticias, ante el hecho de que, por la incapacidad sobrevenida, al peticionario se le han concedido los beneficios de una pensión por incapacidad no ocupacional.

Por el contrario, la interpretación que han hecho las agencias administrativas de los estatutos aquí en controversia aseguran la estabilidad económica del Sistema de Retiro al impedir que se compensen aquellas incapacidades desarrolladas como resultado de accidentes ocurridos antes de que el empleado y su patrono hayan comenzado a realizar las correspondientes aportaciones al Sistema de Retiro. Es por todo lo anterior, que estamos impedidos de interferir con la interpretación que de la Ley Núm. 447, ante, han hecho tanto la Administración de Retiros como la Junta de Síndicos. Dadas las circunstancias del caso ante nos, dicha interpretación merece toda nuestra deferencia. Véase: A.R.P.E. v. Ozores Pérez, 116 D.P.R. 816, 821 (1986); M & V Orthodontics v. Negdo. Seg. Empleo, 115 D.P.R. 183, 188-189 (1984).

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

Alfonso Vargas Fernández

    Peticionario

       v.                        CC-2001-944       CERTIORARI

Administración de los Sistemas
de Retiro de los Empleados del
Gobierno y la Judicatura

    Recurridos

**SENTENCIA**

San Juan, Puerto Rico, a 8 de abril de 2003

       Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente se dicta Sentencia confirmatoria de la resolución emitida por el Tribunal de Circuito de Apelaciones en el presente caso, confirmatoria de la decisión emitida por la Junta de Síndicos.

       Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Andréu García y el Juez Asociado señor Fuster Berlingeri no intervinieron.

              Patricia Otón Olivieri
           Secretaria del Tribunal Supremo